<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**KATHLEEN FONTI, et al.,**

        **Plaintiffs,**

        **v.**

**HEALTH PROFESSIONALS & ALLIED EMPLOYEES, et al.,**

        **Defendants.**

**Civil Action No. 13-4231 (ES)**

**OPINION**

**SALAS, DISTRICT JUDGE**

Pending before the Court is Defendant Hannah Twomey's appeal of United States Magistrate Judge Joseph A. Dickson's July 11, 2014 Opinion and Order (the "Order"), (D.E. Nos. 49, 50), granting Plaintiffs' request to file the Second Amended Complaint. (D.E. No. 57-2). The Court has considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court AFFIRMS the Order.

## I.  FACTS & PROCEDURAL HISTORY

Kathleen Fonti, Judith Freemantle, Linda Hegarty, Anne Picogna, and Adrian Rojas (collectively, "Plaintiffs") are members of the Health Professionals & Allied Employees AFT/AFL-CIO labor union (the "Union" or "HPAE"). (D.E. No. 51, Second Amended Complaint ("Sec. Am. Compl.") ¶¶ 1-5). Initially, Plaintiff Kathleen Fonti ("Fonti") filed a complaint in the Superior Court of New Jersey, Bergen County Law Division, on May 17, 2013. (D.E. No. 1-1, Ex. A, Complaint). The original complaint asserted claims of breach of fiduciary duty against the Union and its plan administrator under the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. §§ 1104, 1132(c), 1022, 1024.  (*Id.* ¶ 27).  Fonti later filed the First Amended Complaint on June 5, 2013, adding claims for breach of fiduciary duty under ERISA against the Union; Hannah Twomey ("Twomey"), President of the Union; and Michael Slott, Education and Communication Director of the Union (collectively, "Defendants").   (D.E. No. 1-2, Ex. B, Amended Complaint, ¶¶ 8, 11-12).

On June 10, 2013, Defendants removed the case to United States District Court for the District of New Jersey.  (D.E. No. 1, Notice of Removal).  Thereafter, the Union and Twomey filed an answer to the First Amended Complaint and cross-claims against Fonti for defamation. (D.E. No. 15, Amended Answer and Counterclaim).  On December 3, 2013, Judge Dickson entered a Pretrial Scheduling Order that provided the parties the opportunity to amend their pleadings until April 1, 2014.  (D.E. No. 25).  Fonti timely filed a motion seeking leave to file the Second Amended Complaint.  (D.E. No. 34).

In the Second Amended Complaint, Fonti sought to add a claim against Twomey for violating the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501.[1] (D.E. No. 34-1, Brief in Support of Motion to File Second Amended Complaint ("Pl. Am. Br.") at 1).  According to Fonti, Twomey was involved in a romantic relationship with Richard Loccke, a named partner at the law firm Loccke, Correia, Limsky & Buksoky.  (Sec. Am. Compl. ¶ 58). Based on publicly available information, Twomey resides at Loccke's home.  (*Id.*).  As president of the Union, Twomey awarded legal work to Loccke's law firm, without question, on a no-bid basis.  (*Id.* ¶ 61).  The Union paid Loccke's firm approximately $1.4 million in legal fees.  (*Id.* ¶

---

[1] In addition to the LMRDA claim asserted against Twomey, Fonti's Second Amended Complaint added four plaintiffs, Judith Freemantle, Linda Hegarty, Anne Picogna, and Adrian Rojas, and asserted a breach of fiduciary duty claim against two new defendants, Joan Johnson and Christine O'Hearn.  (Sec. Am. Compl. ¶¶ 2-5, 11-12, 45; Pl. Am. Br. at 5).

59).  Twomey's relationship with Loccke, according to Fonti, created a conflict of interest with the Union that Twomey failed to disclose.  (*Id. ¶* 63).

Fonti further asserted that she approached Twomey and questioned her about the conflict of interest, which Twomey failed to address.  (*Id.* ¶ 62).  Moreover, Fonti asserted that in or about 2008, she sent a letter to the Union's State Executive Council regarding Twomey's conflict.  (*Id.* ¶ 64).  However, the Union failed to investigate the matter.  (*Id.*).  Fonti went on to publish details surrounding Twomey's alleged conflict of interest on her website.  (*Id.* ¶ 65).  Other members of the union became aware of Fonti's website and the allegations contained therein.  (*Id.*).

Twomey filed a brief in opposition to Fonti's motion for leave to amend.  (D.E. No. 40-1, Defendant's Brief in Opposition to Plaintiff's Motion to Amend ("Def. Am. Opp. Br.")).  In her opposition, Twomey argued that: (1) Fonti's amendment was futile; (2) the amended pleading was merely harassment and vexatious litigation (bad faith); (3) the proposed LMRDA claim was barred by the statute of limitations; (4) the proposed amendments would prejudice the Defendants; (5) Fonti failed to meet the pleading prerequisites under the LMRDA; (6) the doctrine of laches barred Fonti's LMRDA claim; and (7) Fonti was attempting to create a conflict of interest for the Union.  (*See id.*).  Ultimately, Judge Dickson concluded that Fonti sufficiently pled a LMRDA claim, that Fonti's LMRDA claim constituted good cause pursuant to 29 U.S.C. § 501(b), that Twomey failed to articulate a bad faith argument, and that the amendment would not result in prejudice.   (D.E. No. 49, Judge Dickson's July 11, 2014 Opinion ("Op.") at 7, 9, 10).  Thus, Judge Dickson granted Fonti's motion to amend.  (D.E. No. 50, Judge Dickson's July 11, 2014 Order).  Following Judge Dickson's Order, Fonti filed the Second Amended Complaint.  (D.E. No. 51).

On July 25, 2014, Twomey filed an appeal of Judge Dickson's Order.  (D.E. No. 57-2, Defendant's Brief in Support of Appeal of Magistrate Judge's Order ("Def. Mov. Br.")).  Fonti

filed an opposition thereafter.  (D.E. No. 63, Plaintiff's Brief in Opposition to Appeal of Magistrate Judge's Order ("Pl. Opp. Br.")).  The motion is now ripe for adjudication.

## II.    LEGAL STANDARD

Magistrate judges are afford wide discretion in addressing and deciding nondispositive pretrial matters.  Fed. R. Civ. P. 72(a); *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). On appeal, a "district judge may only set aside an order of a magistrate concerning a nondispositive matter where the order has been shown to be clearly erroneous or contrary to law."  *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 146 (3d Cir. 2009) (quoting *Snow Machs., Inc. v. Hedco, Inc.*, 838 F.2d 718, 727–28 (3d Cir. 1988) (internal quotations omitted)).  "This is so even if [the district court] would have decided the issue differently."  *Marks*, 347 F. Supp. 2d at 149 (citing *Toth v. Alice Pearl, Inc.*, 158 F.R.D. 47, 50 (D.N.J. 1994)). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Id.* (quoting *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990)).  A decision is contrary to law "if the Magistrate Judge misinterpreted or misapplied the applicable law."  *Id.* (citing *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1988)).  The party filing the appeal has the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law.  *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996) (citing *Exxon Corp. v. Halcon Shipping, Co.*, 156 F.R.D. 589, 591 (D.N.J. 1994)).

## III.   DISCUSSION

Twomey asserts that the Order granting Fonti leave to file the Second Amended Complaint ought to be reversed.  (Def. Mov. Br. at 1).  In her opposition to Fonti's motion to amend, Twomey urged Judge Dickson to deny Fonti's motion for several reasons, including: futility, bad faith,

4

prejudice, statute of limitations and doctrine of laches, and Fonti's failure to comply with the pleading prerequisites under the LMRDA.  (*See* Def. Am. Opp. Br.).

Now, on her appeal of the Order, Twomey asserts that Judge Dickson's decision to grant Fonti leave to file the Second Amended Complaint was clearly erroneous and contrary to law because Fonti's amendment was futile and failed to establish good cause pursuant the LMRDA. (Def. Mov. Br. at 1-2).  Furthermore, Twomey asserts that Judge Dickson failed to address the entirety of her pleading prerequisite, bad faith, statute of limitations, and doctrine of laches arguments.  (*Id.*).  The Court will address Twomey's arguments in turn.

**A.  Futility—Failure to State a Cause of Action**

Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading once as a matter of course.  Beyond this, a party may amend a pleading only with leave of the court or with the consent of opposing counsel. Fed. R. Civ. P. 15(a).  The grant or denial of a motion to amend is within the discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Reasons a court could deny leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  An amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (citing *Glassman v. Computervision*, 90 F.3d 617, 623 (1st Cir. 1996)). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

Twomey's opposition to the motion to amend asserted three futility arguments: (1) that Fonti failed to assert her LMRDA as a derivative action, as required under 29 U.S.C. § 501;[2] (2)

---

[2] Twomey did not address this argument in her brief in support of the instant motion.  Thus, the Court concludes that Defendant has abandoned this argument.

that the alleged relationship between Twomey and Richard Loccke failed to meet the reporting requirements listed under the Report of Officers and Employees of Labor Organizations section of the LMRDA, 29 U.S.C. § 432(a)(4); and (3) that Fonti's LMRDA allegations were "purely speculative and conclusory" in that they were based "[u]pon information and belief." (Def. Am. Opp. Br. at 4-5). Essentially, Twomey argued that leave to file the Second Amended Complaint was futile because the allegations would not overcome a motion to dismiss. (*Id.*).

Under the LMRDA, union officers are fiduciaries who have the duty "to hold [the organization's] money and property solely for the benefit of the organization and its members . . . ." 29 U.S.C. § 501(a). Under the same, union officers are to "refrain from . . . holding or acquiring any pecuniary or personal interest which conflicts with the interest of [the] organization." *Id.* Members of a labor organization may sue officers for violations of their fiduciary duties under Section 501(a). 29 U.S.C. § 501(b).

Here, Judge Dickson concluded that Fonti's "allegations state sufficient facts to plead a violation of the LMRDA," (Op. at 8), thus finding Twomey's futility arguments unavailing. Fonti alleged that Twomey was romantically involved with Richard Loccke for thirty years and cohabitated with him. (Sec. Am. Compl. ¶ 58). Furthermore, Fonti alleged that Twomey, as President of the Union, awarded Loccke's law firm legal contracts on a no bid basis. (*Id.* ¶ 61). Essentially, Fonti asserted that Loccke performed legal work for the Union and that the money received from that legal work directly benefited Twomey because she lived with Loccke, thus creating a conflict of interest. (*Id.* ¶ 60).

The Court agrees with Judge Dickson that Fonti sufficiently stated a cause of action under the LMRDA. Contrary to Twomey's argument, Fonti's allegations were not purely speculative and conclusory; she did more than merely recite the language of the LMRDA. Although portions

of Fonti's LMRDA claim were asserted "[u]pon information and belief," others were not. For example, Fonti asserted that "Twomey's romantic relationship with Loccke is a personal interest which has the potential to conflict with the interests of the HPAE," that "Twomey stood to benefit directly from any increase in legal fees HPAE paid to Loccke's firm," and that "Twomey did not respond to Fonti's concerns." (*Id.* ¶¶ 60, 62). Fonti did not make the foregoing assertions upon information and belief.

Furthermore, these same allegations demonstrate that Fonti provided more than threadbare recitals of the LMRDA. Fonti provided detailed factual allegations that state a claim that is plausible on its face. Therefore, Fonti's amendment to include LMRDA allegations against Twomey was not futile.

The Court also concludes that Twomey's futility argument regarding 29 U.S.C. § 432(a)(4) is unavailing. The Report of Officers and Employees of Labor Organizations section of the LMRDA, 29 U.S.C. § 432, requires every officer and employee of a labor organization to report "any . . . interest . . . which he or his spouse or minor child directly or indirectly held in . . . or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from . . . dealing with such labor organization." 29 U.S.C. § 432(a)(4). Fonti's Second Amended Complaint does not assert an independent claim against Twomey under Section 432(a)(4). (Pl. Opp. Br. at 9). Rather, Fonti merely cited Section 432(a)(4) to bolster Plaintiffs' claim that Twomey breached her fiduciary duty under Section 501 by failing to disclose her conflict of interest to the Department of Labor in accordance with 29 USC § 432(a)(4). (*Id.*). Based on Fonti's representations, and the prayer for relief sought in the Second Amended Complaint, (Sec. Am. Compl. ¶ 66A), the Court concludes that Fonti is not asserting a separate claim for damages under 29 U.S.C. § 432(a)(4).

In any event, had Fonti asserted a Section 432(a) claim, a review of the Second Amended Complaint properly supports Fonti's allegation that Twomey held a reportable interest or benefit. The operative language in Section 432(a)(4) states that an officer or employee must report "any . . . interest . . . which he *or* his spouse . . . directly or indirectly held . . . or any other benefit . . . which he *or* his spouse . . . directly or indirectly derived." 29 U.S.C. § 432(a)(4) (emphasis added). Based on the language of the statute, there are two situations that trigger reporting: (1) if an officer or employee directly or indirectly derives a benefit from dealing with the labor organization, or (2) if an officer or employee's spouse or minor child directly or indirectly derives a benefit from dealing with the labor organization. *See id.*

Fonti's allegations would appear to fall squarely within the first situation, where the officer, Twomey, directly or indirectly holds a benefit for herself. Fonti asserts "Twomey stood to benefit directly"[3] from the legal fees that the Union paid Loccke's firm. (Sec. Am. Compl. ¶ 60). Thus, Fonti argues that the statute requires disclosure for direct and indirect interests that a union officer derives from business dealings with the Union without regard to that officer's marital or parental status. (Pl. Opp. Br. at 9). The fact that Twomey was not legally married to Loccke is of no moment in the analysis since Twomey is the officer under Section 432(a)(4) that directly or indirectly holds a reportable benefit. (*Id.*). Based on a review of the Second Amended, Complaint and considering Fonti's articulated reason for citing Section 432(a)(4), the Court concludes that the evidence supports Judge Dickson's decisions as to futility, and the Order was not clearly erroneous or contrary to law.

---

[3] Although Fonti asserts that Twomey stood to directly derive a benefit from the legal fees paid to Loccke's law firm, the Court believes that Fonti could equally assert that Twomey indirectly benefitted from the fees paid to Loccke's firm since Twomey was romantically involved with a named partner at the firm, Richard Loccke, and allegedly cohabited with him. (*See* Sec. Am. Compl. ¶ 60).

### B.  Statute of Limitations

In her opposition to Fonti's motion to amend, Twomey asserted two arguments regarding the time with which plaintiffs may bring Section 501(a) claims.  First, Twomey asserted that New Jersey's two-year tort statute of limitations applies to causes of action under the LMRDA.  (Def. Am. Opp. Br. at 7).  Thereafter, Twomey asserted that actions arising under Section 501(a) are equitable in nature and governed by the doctrine of laches, rather than a specific statute of limitations.  (*Id.* at 16).

Section 501(a) claims are equitable in nature.  Therefore, the doctrine of laches, rather than a specific statute of limitations, applies to timeliness.  *See Gruca v. U.S. Steel Corp.,* 495 F.2d 1252, 1257 (3d Cir. 1974) ("In the absence of any statute of limitations made applicable to similar equitable claims, equity has provided its own rule of limitations through the use of the doctrine of laches."); *see also Teamsters, Chauffeurs, Wharehouseman & Helpers, Local 764 v. Greenawalt*, 880 F. Supp. 1076, 1083 (M.D. Pa. 1995);  *Morris v. Scardelletti*, No. 94-3557, 1994 WL 675461, at *7–8 (E.D. Pa. Nov. 23, 1994).

"Laches conceptualizes the inequity which may inhere when a stale claim is permitted to be enforced. By its very nature the doctrine addresses itself to the sound discretion of the trial judge." *Gruca*, 495 F.2d at 1258.  The doctrine of laches consists of two elements, inexcusable delay in instituting suit and prejudice resulting from such delay.  *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 208 (3d Cir. 1999).  To show inexcusable delay, the party asserting laches must show that the nonmoving party sat on its rights.  *Beattie v. Line Mountain Sch. Dist.*, 992 F. Supp. 2d 384, 396 (M.D. Pa. 2014) (citing *In re Mushroom Transp. Co.*, 382 F.3d 325, 342–43 (3d Cir. 2004)).  To establish prejudice, the party raising laches "must demonstrate that the delay caused a

disadvantage in asserting and establishing a claimed right or defense." *U.S. Fire Ins. Co.*, 182 F.3d at 208 (quoting *Mushroom Transp. Co.*, 382 F.3d at 327 (internal citations omitted)).

Twomey's assertion that Fonti "sat on her hands for nearly six (6) years before taking any type of [legal] action," (Def. Mov. Br. at 8), could constitute inexcusable delay, and therefore, she contends, Judge Dickson should not have permitted Fonti to amend the First Amended Complaint. (*Id.*; Def. Am. Opp. Br. at 16).  Twomey further asserts that Judge Dickson's failure to specifically address her laches argument was clearly erroneous.  (Def. Mov. Br. at 8).  Although Judge Dickson did not specifically consider Twomey's laches argument, a review of His Honor's Order indicates that Judge Dickson found that Twomey would not be disadvantaged since fact discovery had not yet concluded.  (Op. at 10).  Furthermore, a review of Twomey's briefs submitted in support of the instant appeal motion and in opposition to Fonti's motion to amend reveal that what is significantly missing from Twomey's argument is any assertion that she would be disadvantaged in asserting a claimed right or defense. *See U.S. Fire Ins. Co.*, 182 F.3d at 208.  Accordingly, the Court agrees with Judge Dickson that allowing Fonti to proceed with her LMRDA claim will not disadvantage Twomey.

### C.  Pleading Prerequisites of 29 U.S.C. § 501

Additionally, Twomey asserts that Fonti failed to meet the pleading prerequisites outlined in 29 U.S.C. § 501(b).  Under Section 501(b),

> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and *the labor organization or its governing board or officers refuse or fail to sue* or recover damages or secure an accounting or other appropriate relief *within a reasonable time after being requested to do so by any member of the labor organization*, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall

be brought except *upon leave of the court obtained upon verified application and for good cause shown*, which application may be made ex parte.

29 U.S.C. § 501(b) (emphasis added).  Twomey claims that Fonti failed to make a request upon the Union, verify the Second Amended Complaint, and demonstrate good cause.  (Def. Mov. Br. at 9).

"Section 501(b) was designed to prevent the filing of harassing and vexatious suits brought without merit or good faith against union officials." *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1253 (3d Cir. 1972).  However, "a lack of formality in observing the procedures of Section 501(b) will not bar a court from granting leave, where appropriate." *Id.* at 1249.  These formalities include the request requirement, the good cause requirement, and the verified application requirement.

The first of the three formalities is the request requirement.  Prior to asserting a claim under Section 501(a), a labor organization member should request that the labor organization secure appropriate relief on the member's behalf.  29 U.S.C. § 501(b).   Should the labor organization refuse or fail to bring suit, the member may do so for the benefit of the labor organization. *Id.*  In *Sabolsky*, the Third Circuit held that "there is no mandatory exhaustion of internal remedies requirement in suits brought under Section 501 of the LMRDA," *id.* at 1252, and noted that particular requests to sue could potentially be futile, *id.* at 1253. *See also O'Rourke v. Crosley*, 847 F. Supp. 1208, 1219 (D.N.J. 1994) (holding that plaintiff "is entitled the opportunity to prove that requesting that the union take legal action would have been futile").

Based upon the allegations contained in the Second Amended Complaint, Fonti complied with Section 501(b)'s request requirement.  According to Fonti, she approached Twomey, as President of the Union, to inform Twomey that her conflict of interest violated the Union's rules.  (Sec. Am. Comp. ¶ 62).  Moreover, in 2008, Fonti wrote a letter to the Union's State Executive Council concerning Twomey's alleged conflict of interest.  (*Id.* ¶ 64).  Furthermore, since June

11

2013, Fonti has publicly posted about Twomey's alleged conflict of interest on her website.  (*Id.* ¶ 65).  According to Fonti, none of her attempts upon the Union or Twomey yielded investigation into Twomey's conflict of interest.   (Pl. Opp. Br. at 14).  In any event, Fonti also alleges that, given Twomey's position as President of the Union, any further demand upon the Union to take action would be futile.  (Sec. Am. Compl. ¶ 66).   Fonti's request to the Union and Twomey and letter to the State Executive Council, although informal, can be construed as a request to take action against Twomey for her alleged violation of fiduciary duties.  Furthermore, the Court agrees that any further demand upon the Union would have been futile given Twomey's position as President. Therefore, Fonti has established not only that a request was made, but that any further request would have been futile.  *See Sabolsky*, 457 F.2d at 1253.

The second formality is the good cause requirement.  The Third Circuit has held that "the existence of 'good cause' may be discernible from the allegations of the verified complaint." *Loretangeli v. Critelli*, 853 F.2d 186, 192 (3d Cir. 1988).  A court, in its discretion, may also "take all the facts and circumstances into consideration in determining whether good cause has been shown."  *Purcell v. Keane*, 406 F.2d 1195, 1200 (3d Cir. 1969); *see also Woods v. Local No. 12 Sheet Metal Workers Int'l Ass'n*, 438 F. Supp. 578, 580-81 (W.D. Pa. 1977).

The Court concludes that Fonti established good cause.  Judge Dickson thoroughly reviewed the Second Amended Complaint and concluded that Fonti sufficiently stated a LMRDA claim.  Based on this finding, Judge Dickson held that Fonti's allegations constituted good cause pursuant to Section 501(b).  (Op. at 9).  The Court concurs with Judge Dickson that Fonti properly pled a LMRDA cause of action.  Therefore, Fonti's LMRDA claim is meritorious, which contrasts with the types of suits that 501(b) was designed to prevent. *See Sabolsky*, 457 F.2d at 1253 (quoted

*supra*). As such, Judge Dickson's decision that Fonti established good cause was not clearly erroneous or contrary to law.

The third and final formality is the verified application requirement. The LMRDA does not define a verified application. However, Section 501(b) case law reveals a commonality. In *Sabolsky*, the Third Circuit addressed Section 501(b) and remanded the case to the district court to grant leave to file the complaint. *Sabolsky*, 457 F.2d at 1249. The plaintiffs in *Sabolsky* contended that they satisfied the verified application requirement simply by filing a complaint that was verified by over 100 union members. *Id.* Similarly, in *Pawlak v. Greenawalt*, the district court concluded that the plaintiffs' complaint itself met the verified application requirement. There, the complaint was verified by two plaintiffs, and the first paragraph of the complaint contained a prayer for relief requesting permission to sue. *Pawlak v. Greenawalt*, 464 F. Supp. 1265, 1269 (M.D. Pa. 1979).

Here, Twomey alleges that Fonti's pleadings are not verified and Judge Dickson's Order was clearly erroneous for failing to address all of the procedural prerequisites under Section 501(b). However, the Court disagrees with Twomey and concludes that Fonti complied with the verified application requirement. Fonti, along with the other Plaintiffs, submitted sworn documents certifying the allegations against Twomey. (*See* D.E. Nos. 43-2, 43-3, 43-4, 43-5, 43-6). The terms verify and certify are nearly synonymous.[4] Therefore, the Court will construe Plaintiffs' certifications as verification of the allegations against Twomey under the LMRDA, thus satisfying the verified application requirement. *See Sabolsky*, 457 F.2d at 1249; *Pawlak*, 464 F. Supp. at 1269.

---

[4] According to Merriam Webster's Online Dictionary, the definition of verify is "to confirm or substantiate by law or oath," and the definition of certify is "to attest to authoritatively . . . confirm." Merriam-Webster Online Dictionary, (Mar. 24, 2015, 2:01 PM) http://www.merriam-webster.com/dictionary/verify, http://www.merriam-webster.com/dictionary/certify.

In any event, if the foregoing facts did not amount to a verified application, the Court would not bar Fonti from suing because "a lack of formality in observing the procedures of Section 501(b) will not bar a court from granting leave, where appropriate." *Sabolsky*, 457 F.2d at 1249. Both Judge Dickson and the Court conclude that Fonti sufficiently stated a LMRDA claim and demonstrated good cause under Section 501(b). Therefore, the Court concludes that it would not be appropriate to bar Fonti from asserting a viable LMRDA. As such, the Order was not clearly erroneous or contrary to law by permitting Fonti to file the Second Amended Complaint.

### D. Harassment and Vexatious Litigation (*i.e.* Bad Faith)

Lastly, the Court shall address Twomey's harassment and vexatious litigation (*i.e.* bad faith) argument. Twomey argues that the "entire lawsuit is nothing more than retaliation." (Def. Mov. Br. at 6). In particular, Twomey states that "Fonti holds Defendant Twomey directly responsible for Fonti's prior criminal conviction," and that "[t]he website and Amended Complaints are designed solely to harass Twomey." (*Id.*). Twomey contends that Judge Dickson's Order was clearly erroneous for failing to address her bad faith argument. (*Id.* at 7).

Contrary to Twomey's assertion, the Order did address her bad faith argument. Judge Dickson concluded that Twomey failed to articulate a viable bad faith argument. (Op. at 7 n.6). Upon review, the Court concurs. Twomey premises her bad faith argument on harassment and vexatious litigation, which Section 501(b) was enacted to prevent. The Court has already concluded, however, that Fonti has demonstrated "good cause" to assert a LMRDA claim and that she complied with all of the pleading prerequisites under Section 501(b). Furthermore, Twomey's bad faith argument is premised on conclusory allegations, (*see* Def. Mov. Br. at 6, (that "Fonti holds Defendant Twomey directly responsible for Fonti's prior criminal conviction," that the "Amended Complaints are designed solely to harass," and that "[t]his entire lawsuit is nothing

more than retaliation"), and provides no factual basis upon which the Court can infer bad faith.  As such, the Court concludes that Twomey failed to articulate a viable bad faith argument, and the Order was not clearly erroneous or contrary law.

**IV.    CONCLUSION**

Accordingly, Defendant's motion appealing Judge Dickson is DENIED.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

15