**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KATHELEEN FONTI, et al.,**  Plaintiffs,  v.  **HEALTH PROFESSIONALS AND ALLIED EMPLOYEES, AFT/AFL-CIO, et al.,**  Defendants. | Civil Action No. 13-4231 (ES) (JAD)  OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants Health Professionals and Allied Employees, AFT/AFL-CIO's (the "Union") and Hannah Twomey's ("Twomey") (together "Defendants") appeal of Magistrate Judge Joseph A. Dickson's ("Judge Dickson") September 25, 2017 Letter Order (D.E. No. 229 (the "Order")). (D.E. No. 236). The Court has considered the parties' submissions and briefing,[1] and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, the Court DENIES Defendants' appeal and AFFIRMS Judge Dickson's Order.

**I.     Background**

    **A.     Factual Background**

The facts of the underlying lawsuit were summarized in this Court's March 31, 2018 Opinion. *See Fonti v. Health Professionals & Allied Employees*, No. 13-4231, 2017 WL 1197759,

---

[1] (D.E. No. 236-2 ("Defs. Mov. Br."); D.E. No. 237 ("Pl. Opp. Br."); D.E. No. 238 ("Defs. Reply")).

at *1–4 (D.N.J. Mar. 31, 2017). The Court summarizes only facts relevant to the present appeal.

Katheleen Fonti ("Fonti") and other members of the Union (together "Plaintiffs"), initiated the underlying lawsuit in state court before the case was removed to this Court in July 2013. *Id.* at *4. At the time, Plaintiffs were represented by another counsel. *See id.* at *2. The current dispute arises because on January 28, 2014, Meadowlands Hospital (the "Hospital")—a non-party to the litigation and signatory to collective bargaining agreements with the Union—wrote a $25,000 check to Chiesa Shahinian & Giantomasi PC ("CSG") as payment of Fonti's and the other Plaintiffs' initial retainer fee. *Id.* at *3. As far as the record shows, this payment was a loan from the Hospital to Fonti, *see id.* at *13, though no loan agreement or similar documentation has been produced (*see* D.E. No. 199 ¶ 12), and it is unclear whether the loan was repaid (*see* D.E. No. 176 ¶ 23).[2] CSG then replaced the prior counsel as attorney of record in the lawsuit and entered into retainer agreements with Fonti and the other Plaintiffs. *Fonti*, 2017 WL 1197759, at *3. Concurrently, Plaintiffs, through CSG, filed a second amended complaint ("SAC"). *Id.* at *4. The SAC added Count III, breach of fiduciary duty against all defendants, and Count IV, a Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), breach of fiduciary duty against Twomey, the Union's president. *Id.*

On March 31, 2017, the Court granted Defendants' motion for summary judgment on Counts III and IV of the SAC. *Id.* at *15. Defendants argued entitlement to summary judgment on both counts based on the "interested employer" rule under the LMRDA. *Id.* at *6 & *10. As to Count III, the Court held that the interested employer rule did not apply because the claim arose under ERISA, not the LMRDA. *Id.* at *6. Ultimately, the Court granted summary judgment

---

[2] As with their summary judgment motion, Defendants again state that the Hospital made two separate $25,000 payments to CSG. (Defs. Mov. Br. at 3). But as this Court stated in its Opinion, Plaintiffs disputed the second $25,000 payment as being made in error, *Fonti*, 2017 WL 1197759, at *2 n.4, and Defendants have not provided any new evidence that would show otherwise.

because the evidence supported the finding that Defendants were not fiduciaries as defined by ERISA. *Id.* at *7–10.

As to Count IV, Plaintiffs raised a novel argument in this Circuit, arguing that because the claim was brought for the benefit of the Union, and only the Union would benefit from a favorable finding, the Hospital was not "interested" within the meaning of the LMRDA. *Id.* at *11. Although this Court found that argument "persuasive," the Court ultimately found the reasoning by sister Circuit Court of Appeals more compelling in interpreting the meaning of the "interested employer" provision of the LMRDA. *Id.* at *12. Thus, the Court granted summary judgment in favor of Defendants on Count IV. *Id.* at *13.

Subsequently, on July 14, 2017, the lawsuit was terminated after the parties agreed that the remaining federal law counts were moot, and the Court declined to exercise supplemental jurisdiction over remaining state-law claims. (D.E. No. 225).

**B.  The Motion for Sanctions and Judge Dickson's Order**

On May 19, 2017, before the case was terminated, Defendants filed a motion for leave to move for sanctions against CSG and the Hospital based on the Hospital's financing of Plaintiffs' litigation. (D.E. No. 214). Specifically, Defendants sought "an Order directing the Hospital and CSG to pay the attorneys' fees and costs incurred by Defendants in defending against Plaintiffs' action, as sanctions for the Hospital's and CSG's flagrant and continuing violation of the 'interested employer' provision of" the LMRDA. (*Id.* at 1).

On September 27, 2017, Judge Dickson denied Defendants' motion on the merits. (Order at 4). Although Defendants contended that the Court should not reach the merits, Judge Dickson noted that the parties' briefing was predominantly focused on the merits of the motion for sanctions rather than on whether leave should be granted. (*Id.* at 2.). Judge Dickson observed that

Defendants' moving brief "contained no arguments pertaining to its motion for leave to file and sixteen pages on the merits of . . . whether sanctions should be imposed" and that Defendants' reply focused only 2.5 pages on the motion to leave and eight on the merits. (*Id.* (citing D.E. Nos. 214 & 222)). Thus, Judge Dickson reasoned that since the parties had already extensively briefed the merits, it would have been "unnecessary and judicially inefficient for the parties to provide additional briefing." (*Id.*).

As to the claim for sanctions against CSG,[3] Judge Dickson concluded that "[t]here has been no finding that the lawsuit was frivolous, or filed in bad faith." (*Id.*). To support this finding, Judge Dickson properly explained that Count III of the Complaint contained plausible allegations that Defendants engaged in several bad faith infractions, but this Court granted summary judgment against Plaintiffs because Defendants were not fiduciaries under ERISA. (*Id.*). Additionally, Judge Dickson explained that in granting summary judgment on Count IV, this "Court found that Plaintiffs' argument was 'persuasive' but ultimately that it 'misses the point.'" (*Id.* (quoting *Fonti*, 2017 WL 1197759, at *12)). "Nowhere did the Court find bad faith or imply that sanctions were appropriate." (*Id.* at 2–3). As such, Judge Dickson reasoned that "the Court's use of 'persuasive' in addressing [Plaintiffs'] arguments is inconsistent with any finding of bad faith." (*Id.* at 3).

Judge Dickson went on to state that other issues further undercut the suitability of imposing the requested sanction in this case. For example, Judge Dickson explained that "[t]he conduct complained of herein was not disobeying a Court Order nor was it abusing the litigation process. It was a violation of a statute, where the remedy for such violation has been found to be a dismissal of the action." (*Id.*). And Defendants "d[id] not cite to any authority where a court suggests that an additional remedy is implied or required." (*Id.*). Additionally, Judge Dickson also reasoned

---

[3] The Court notes that Defendants and the Union reached a confidential settlement, and therefore, Defendants do not appeal that portion of the Order. (Defs. Mov. Br. at 1, n.1; D.E. No. 234).

that the existence of a "dispute to whether the funds paid to CSG were a loan or not" further clouded "the record as to any bad faith on the part of CSG." (*Id.*). Lastly, the fact that Defendants were pursuing a remedy for the same conduct against the Hospital through another venue, coupled with the fact that this had been a "messy case" full of allegations of inappropriate conduct by both sides, further weighed against the Court's exercise of its inherent power. (*Id.* at 3–4).

Consequently, Judge Dickson found it more appropriate for the Court to decline "to wade into the morass of ill will between these litigants in order to punish the Counsel for Plaintiff and the Hospital. . . ." (*Id.* at 4).

On October 9, 2017, Defendants appealed Judge Dickson's Order, seeking sanctions against both CSG and the Hospital. (D.E. No. 230). During the pendency of the appeal, Defendants and the Hospital reached a settlement. (D.E. No. 234). Because the appeal raised arguments against the Hospital that were intertwined with arguments against CSG, the Court denied the appeal without prejudice. (D.E. No. 235). On May 13, 2018, Defendants filed the instant appeal disputing the denial of sanctions as to CSG only. (D.E. No. 236).

## II. Legal Standard

Non-dispositive motions decided by a magistrate judge may only be set aside by the district court if the "order is found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1). Conversely, dispositive motions heard by magistrate judges are subject to *de novo* review by the district court. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2).

Both parties here rely on the "clearly erroneous or contrary to law" standard. (*See* Defs. Mov. Br. at 6; Pls. Opp. Br. at 3). It is unclear, however, whether motions for sanctions like the one in question here, seeking attorneys' fee after discovery closed but before the disposition of the

entire case, are considered dispositive or non-dispositive. *Compare In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 63 F. Supp. 2d 516, 519 (D.N.J. 1999), *aff'd in part, rev'd in part on other grounds by*, 278 F.3d 175 (3d Cir. 2002) (applying de novo review after noting that "[t]he circuits are divided as to whether the imposition of sanctions is considered a dispositive motion" and that "these decisions indicate that post-discovery sanctions may be dispositive under Fed. R. Civ. P. 72"), *with Miller v. Beneficial Mgmt. Corp.*, 844 F.Supp. 990, 1007 (D.N.J. 1993) (treating motion for sanctions as non-dispositive and reviewing magistrate decision to determine whether it was clearly erroneous or contrary to law), *and Medphone Corp. v. Denigris,* No. 92-3785, 1993 WL 13147999, *4 (D.N.J. July 28, 1993) (same).

In any event, the Court need not resolve this issue because, even applying *de novo* review, the Court finds that Defendants have failed to show that the requested sanctions are warranted. Therefore, Judge Dickson Order could not have been clearly erroneous or contrary to law.

## III. Discussion

### A. The Court's Inherent Authority

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1224 (3d Cir. 1995) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal brackets and quotation marks omitted). "Among the implied and 'incidental' powers of a federal court is the power 'to discipline attorneys who appear before it.'" *Id.* (quoting *Chambers*, 501 U.S. at 43). Thus, "a court has the inherent authority to impose sanctions when an attorney has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188–

89 (3d Cir. 2002) (quoting *Chambers*, 501 U.S. at 45).

"However, 'because of their very potency, inherent powers must be exercised with restraint and caution.'" *Prudential Ins. Co.*, 278 F.3d at 189 (quoting *Chambers*, 501 U.S. at 44) (internal brackets omitted). "In the Third Circuit, 'a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified.'" *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 100 (D.N.J. 2006) (quoting *Republic of Philippines v. Westinghouse Electric Corp.,* 43 F.3d 65, 74 (3d Cir. 1995)). Thus, a court should invoke its inherent power sparingly and under limited circumstances where misconduct is clear. That is, "a finding of bad faith is 'usually' required" before inherent-power sanctions are ordered, and generally a court should not resort to such sanctions unless "'the conduct of a party or an attorney is egregious and no other basis for sanctions exists.'" *Prudential Ins. Co.*, 278 F.3d at 181 & n.4, 189 (quoting *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995)).

When the sanctions sought are the imposition of attorneys' fees and costs, bad faith is a required showing. *See Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir. 1991); *Republic of Philippines*, 43 F.3d at 74 n.11 ("*Landon* addressed the propriety of assessing *attorneys' fees* against a litigant; thus, we followed the Supreme Court's decision in *Chambers*, which also involved assessment of attorneys' fees.") (emphasis in original); *see also Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991) ("To justify the imposition of excess costs of litigation upon an attorney his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation."). "To find bad faith, a court must find 'some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay.'" *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 617 (D. Del. 2008)

(quoting *Ford v. Temple Hosp.,* 790 F.2d 342, 347 (3d Cir. 1986)). Moreover, bad faith conduct must be demonstrated through clear and convincing evidence. *See Sutton v. Am. Fed'n of State, Cty. & Mun. Workers, Local 1510*, No. 96-6065, 1997 WL 34663, at *7 (E.D. Pa. Jan. 28, 1997); *Ali v. Tolbert,* 636 F.3d 622, 627 (D.C. Cir. 2011).

**B. Analysis[4]**

Defendants argue that Judge Dickson's "suggestion that the Court cannot exercise its inherent power to sanction CSG's misconduct absent some (undefined) further showing of bad faith . . . is in error in several respects." (Defs. Mov. Br. at 12). First, Defendants argue that Judge Dickson misstated the law because "the Third Circuit has recognized [that] a showing of bad faith is *not* required for imposition of inherent authority sanctions." (*Id.*). In support, Defendants point the Court to *Chambers* where the Supreme Court noted that sanctions may be imposed for actions taken "in bad faith, vexatiously, wantonly, *or* for oppressive reasons." (*Id.* (quoting Chambers, 501 U.S. at 45–46) (emphasis in original)). Defendants also note that the Third Circuit has stated that inherent power sanctions "do not always require a showing of bad faith." (*Id.* (quoting *Prudential Ins. Co.*, 278 F.3d at 181 n.4)).

This argument, however, misunderstands the language in these cases. Defendants are

---

[4] As a threshold matter, the Court rejects Defendants' unsupported one-sentence suggestion that Judge Dickson committed procedural error by considering the merits of Defendants' motions (*see* Defs. Mov. Br. at 5), when Defendants only briefed the merits (*see* D.E. Nos. 214 & 222). Because the parties had briefed the merits, and it was evident from the briefing that Defendants could not meet the high standard required for such sanctions, the Court sees no error in the finding that it was "unnecessary and judicially inefficient for the parties to provide additional briefing." (Order at 2.). *See, e.g.*, *NSI Int'l, Inc. v. Mustafa*, No. 12-5528, 2014 WL 12539347, at *15 (E.D.N.Y. Feb. 25, 2014), *report and recommendation adopted*, 2014 WL 1232941 (E.D.N.Y. Mar. 26, 2014), *aff'd*, 613 F. App'x 84 (2d Cir. 2015) (denying on the merits motion for leave to move for sanctions based on arguments that the lawsuit was frivolous, when the court concluded that the plaintiffs had presented a valid claim); *MGA Entm't, Inc. v. Nat'l Prod. Ltd.*, No. 10-7083, 2012 WL 4052023, at *6 (C.D. Cal. Sept. 14, 2012) (denying motion for leave to file motion for sanctions on the merits because defendants failed to provide sufficient evidence to support sanctions); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (recognizing "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) ("A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides authority to fashion tools that aid the court in getting on with the business of deciding cases.").

correct in that a showing of bad faith is not always required for a court to exercise its inherent power to impose sanctions. *See Prudential Ins. Co.*, 278 F.3d at 181 n.4. As Justice Scalia explained in *Chambers*, not "*all* sanctions imposed under the courts' inherent authority require a finding of bad faith," but rather, the required finding will depend on the type of sanction sought. *Chambers*, 501 U.S. at 59 (Scalia, J., dissenting) ("For example, a court has the power to dismiss when counsel fails to appear for trial, even if this is a consequence of negligence rather than bad faith.").

The majority Opinion and Justice Scalia also explained, however, that the imposition of attorneys' fees, i.e. fee-shifting, *does* require a finding of bad faith. *See id.* at 50 (Opinion of the Court) ("A court must . . . comply with the mandates of due process, both in determining that the *requisite bad faith* exists and in assessing fees.") (emphasis added); *id.* at 59 (Scalia, J., dissenting) ("[A] 'bad-faith' limitation upon the particular sanction of attorneys' fees derives from our jurisprudence regarding the so-called American Rule, which provides that the prevailing party must bear his own attorneys' fees and cannot have them assessed against the loser."). And a close reading of the language in *Prudential* and the cases cited by it plainly shows that the Court of Appeals for the Third Circuit has followed this bad faith requirement. *See Landon*, 938 F.2d at 454 (requiring a showing of bad faith to impose attorneys' fees under court's inherent power to sanction); *Republic of Philippines*, 43 F.3d at 74 n.11 (discussing Justice Scalia's dissent and cabining *Landon* to attorneys' fees cases); *see also In re Beers*, No. 09-1666, 2009 WL 4282270, at *7 (D.N.J. Nov. 30, 2009), *aff'd*, 399 F. App'x 748 (3d Cir. 2010) ("While the Third Circuit has not made clear when sanctions may be imposed based upon something less than bad faith conduct, this Court agrees with the Bankruptcy Court that when the sanction sought involves fee-shifting, a finding of bad faith is indeed required.").

Indeed, the same bad faith requirement applies to sanctions under 28 U.S.C. § 1927[5] for substantially the same underlying policy concerns. *See LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC.*, 287 F.3d 279, 289 (3d Cir. 2002) ("The power to sanction under § 1927 necessarily carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.") (internal quotation marks omitted); *Baker Industr. Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 208 (3d Cir. 1985) ("Th[e] bad faith requirement is . . . necessary to avoid chilling an attorneys' legitimate ethical obligation to represent his client zealously[.]").

Here, Defendants ask this Court to exercise its inherent authority to sanction CSG by imposing attorneys' fees and costs on CSG. (Defs. Mov. Br. at 1). As just explain, under *Chambers*, *Landon*, and their progeny such sanctions require a showing of bad faith. Therefore, Judge Dickson was correct in relying on the fact that "[n]owhere did the Court find bad faith or imply that sanctions were appropriate" to deny that request. (*See* Order at 2–3). Therefore, the Court rejects Defendants' arguments to the contrary.

Defendants next argue that Judge Dickson "disregard[ed] the severity of CSG's misconduct." (Defs. Mov. Br. at 12). Defendants note that the LMRDA, and its prohibition against interested employer involvement in litigation against unions, has been in effect since 1959. (*Id.* at 10). Based on this, Defendants argue that CSG acted in bad faith by proceeding with the litigation, which CSG knew or should have known was "baseless *and* in violation of federal law. . . ." (*Id.* at 12–13 (emphasis in original)).

However, "[t]here has been no finding that the lawsuit was frivolous, or filed in bad faith" (Order at 2), and the Court sees no reason to make such a finding now. As Judge Dickson correctly

---

[5] 28 U.S.C. § 1927 permits the Court to impose attorneys' fees sanctions on counsel who "multiplies the proceedings in any case unreasonably and vexatiously. . . ."

explained, the claims in question were far from baseless or frivolous. (*See id.* at 2–3). Count III of the Complaint contained plausible allegations that Defendants engaged in bad faith infractions against its own members, giving rise to a colorable ERISA fiduciary duty claim. (*Id.* at 2); *Fonti*, 2017 WL 1197759, at *7. For instance, Twomey lived for years, rent-free, in the home of one of the named partners of the Union's longstanding law firm, without disclosing that relationship, and while awarding, "on a no-bid basis, virtually all of the Union's legal work" to that partner. *Fonti*, 2017 WL 1197759, at *1–2 & 10. Indeed, although Defendants argued that the LMRDA prevented this claim from going forward, the "Court did not dismiss the claims in Count III because of the 'interested party' rule." (Order at 2); *see also Fonti*, 2017 WL 1197759, at *6. Rather, the Court dismissed the claim, after analyzing both parties' arguments, on the ground that the evidence supported the finding that Defendants were not fiduciaries under ERISA. *Fonti*, 2017 WL 1197759, at *7–10.

Similarly, as to Count IV—a claim raised only against Twomey—Judge Dickson relied on this Court's finding that Plaintiff's arguments were "persuasive." (Order at 2 (quoting *Fonti*, 2017 WL 1197759, at *12)). As Defendants have conceded, the legal question this Court answered was an issue of first impression that had "not previously been authoritatively determined either in the courts of this federal district or by the Third Circuit." (D.E. No. 211 at 2). Plaintiffs, through CSG as their counsel, raised colorable arguments, arguments that this Court found to be persuasive. *See Fonti*, 2017 WL 1197759, at *12. And as Judge Dickson explained, "the Court's use of 'persuasive' in addressing [Plaintiffs'] arguments is inconsistent with any finding of bad faith." (Order at 2–3). The fact that this Court ultimately decided that the law of other circuits was more compelling does not mean that the underlying claim and arguments were frivolous or baseless. *See Kelly v. HD Supply Holdings, Inc.*, No. 14-372, 2014 WL 5512251, at *6 (D.N.J. Oct. 31,

2014) ("A weak case, as long as it is arguable, does not merit sanctions.").

Moreover, Defendants' argument also ignores that the Supreme Court and the Court of Appeals have consistently warned that courts should exercise their inherent power "with great caution," *Chambers*, 501 U.S. at 43, and "to sparingly award sanctions in all but the most egregious of cases, 'lest the prospect thereof chill the ardor of proper and forceful advocacy on behalf of [the] client'" *Kelly*, 2014 WL 5512251, at *6 (quoting *Hackman*, 932 F.2d at 242). *See also Ford v. Temple Hosp.*, 790 F.2d 342, 349 (3d Cir. 1986) ("The uncritical imposition of attorneys' fees can have an undesirable chilling effect on an attorney's legitimate ethical obligation to represent his client zealously.").

Rather, sanctions of the kind Defendants seek are only imposed in the most egregious of circumstances, when "there is an adequate factual predicate for flexing [the Court's] substantial muscle under its inherent powers. . . ." *See Republic of Philippines*, 43 F.3d at 74. *See, e.g.*, *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 113 (3d Cir. 2011) (affirming imposition of attorneys' fees as inherent power sanctions when counsel repeatedly violated court orders both during discovery and during a trial, even after several sidebars and conference in chambers); *Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 161 (D.N.J. 1999) (imposing sanctions based on the court's inherent power when attorney made multiple "unsubstantiated personal attacks on Plaintiff and her attorneys" and repeatedly "violated a myriad of professional rules of conduct and rules of procedure" throughout the pendency of the litigation); *Pennsylvania Gen. Energy Co., LLC v. Grant Twp.*, No. 14-0209, 2018 WL 306679, at *3 & 9–12 (W.D. Pa. Jan. 5, 2018) (finding bad faith and sanctioning attorney under the court's inherent power for filing "frivolous legal claims and defenses" through "numerous motions and pleadings" pursuing "nearly identical and rejected theories" over the course of fifteen years which were "clearly unreasonable").

The record before this Court falls far short of that standard. As such, the Court also finds unpersuasive Defendants' arguments that Judge Dickson's Order is premised on clearly erroneous findings. (*See* Defs. Mov. Br. at 5). Particularly, to support these arguments Defendants make a number of misstatements, mischaracterizations, and unsupported assertions of fact devoid of citation to the record.[6]

For instance, Defendants contend that Judge Dickson "misapprehended the basis for the request," insinuating that Judge Dickson interpreted the motion as a request for sanction pursuant to the LMRDA. (Defs. Mov. Br. at 9 (citing Order at 3)). But a plain reading of Judge Dickson's Order shows that Judge Dickson only pointed to the fact that Defendants had already received a remedy in the form of dismissal of the case *after* he had determined that the record did not evidence bad faith or a similar reason to impose the requested sanctions. (*See* Order at 3). Further, Judge Dickson also highlighted how Defendants' briefing had failed to provide any case law, involving similar facts, where a court had imposed sanctions in addition to dismissing the case. (*Id.*). Defendants' briefing on this appeal is equally lacking in that respect.

Defendants also contend that Judge Dickson committed clear error when he determined that the nature of the Hospital's payment of legal fees to CSG "would require an evidentiary

---

[6] Defendants raise a number of bald assertions. (*See, e.g.*, Defs. Mov. Br. at 3 ("CSG continued to *cover up* the Hospital's *illegal* financing of this litigation during Defendants' deposition of Plaintiff Fonti.") (emphasis added); *id.* at 10 (stating that CSG engaged in "*intentional, covert* and continuing litigation of this case in violation of a federal statutory prohibition") (emphasis added); *id.* at 12 (stating that CSG "*conceal[ed]* these unlawful payments") (emphasis added)). Defendants, however, provide no citation to the record to support the majority of these assertions, and as such, the Court refuses to entertain them.

At the same time, for many of the assertions that do contain a citation, the cited portions of the record do not directly support the proposition. For example, in their Statement of Facts Defendants state that "CSG has *attempted to conceal* the fact that the Hospital was illegally financing this protracted litigation from the very beginning of the law firm's involvement in the case." (Defs. Mov. Br. at 3 (emphasis added)). To support this, they point to the language in the retainer agreements and assert that CSG "mischaracterized" the payments as coming from Fonti. (*Id.* (citing D.E. Nos. 176 ¶ 20, 176-18 & 176-19). But Defendants appear to ignore that the evidence in this record indicates that the payment from the Hospital was a loan to Fonti, and as such, the statements that "we already received your retainer" and "we have already received a retainer from Ms. Fonti" are not mischaracterizations, since presumably Fonti was responsible for that money.

hearing." (Defs. Mov. Br. 5 (quoting Order at 3)). To support this argument, Defendants contend that "the Court has already determined that the Hospital's covert payments to CSG constituted 'direct[] financ[ing]' of 'Plaintiffs' introduction of Count IV into this action' and were therefore unlawful." (*Id.* (quoting *Fonti*, 2017 WL 1197759, at *13)). But this argument mischaracterizes both Judge Dickson's Order and this Court's Opinion. In finding that the Hospital had "directly financed" Plaintiffs, this Court *did not* determined that the payments were "covert," or "unlawful," much less that CSG acted in bad faith. *See generally, Fonti*, 2017 WL 1197759. Indeed, this Court stated that the payment was a loan from the Hospital to Fonti, because that is what the available evidence supports. *See Id.* at *13.[7] In turn, Judge Dickson explained that the existence of this very factual dispute—whether the payment was a loan or not—"clouds the record of any bad faith on the part of CSG." (Order at 3). That is, because it is not even clear whether the payments were not a loan to Fonti, there is no persuasive evidence in this record to show that CSG was acting in bad faith. Defendants' unsupported assertions to the contrary, therefore, fail.

Lastly, Defendants argue that Judge Dickson's Order was premised on the "clearly erroneous" finding that "the relief sought in this action is the same as the relief that was being pursued by the NLRB." (Defs. Mov. Br. at 5). But this statement also mischaracterizes Judge Dickson's Order. Judge Dickson did not find that the relief sought was the same; he stated only that Defendants were already seeking "*a remedy*" for the same "conduct complained of here." (Order at 4 ("This Court declines to wade into the morass of ill will between these litigants in order to punish the Counsel for Plaintiff and the Hospital, particularly where there are additional

---

[7] In their reply, Defendants state that "[o]n the third day of her deposition, November 13, 2015, Fonti finally admitted that the Hospital was subsidizing this case." (Defs. Reply at 2 (citing D.E. No. 238-1)). However, in the cited deposition testimony Fonti states that the money was a loan from Tamara Dunaev, the co-owner of the Hospital. (*See* D.E. No. 238-1 at 3–4). This allegation is supported by the other available evidence. (*See, e.g.*, D.E. No. 176–10, Ex. 8 at 50:16–22). Defendants note that no documentation of this loan has been produced (*see* Defs. Mov. Br. at 4), and that it is unclear whether the loan was repaid (*see* D.E. No. 176 ¶ 23). But these allegations only create a factual dispute as to the nature of the payment, and as such, do not provide clear and convincing evidence of bad faith.

proceedings currently pending *seeking a remedy* for the conduct complained of here.") (emphasis added)). In other words, after having concluded that there was no clear evidence of bad faith or abuse of the judicial process, Judge Dickson added that the Court would especially not exercise its inherent authority to impose sanctions in this case, because of 1) the contentious nature of the underlying litigation and 2) the fact that Defendants were already exploring another avenue of remedy against the Hospital for the same underlying conduct.

In short, the fact remains that the alleged conduct in question here simply does not rise to the level under which the Court should exercise its "substantial muscle under its inherent powers" to impose the requested sanctions. *See Republic of Philippines*, 43 F.3d at 74. Defendants do not meet their burden to clearly show that CSG agreed to represent Plaintiffs and litigated this matter in bad faith or frivolously. There is also no evidence that CSG violated any court orders or otherwise abused the judicial process throughout this litigation. Rather, as already explained, CSG raised colorable arguments that, though ultimately fell short, were persuasive nonetheless. This conduct falls short from "those cases in which the conduct of a party or an attorney is egregious and no other basis for sanction exists." *See Martin*, 63 F.3d at 1265. As such, "[t]his Court declines to wade into the morass of ill will between these litigants in order to punish the Counsel for Plaintiff. . . ." (Order at 4).

## IV. Conclusion

For the foregoing reasons, Defendants' appeal is DENIED and Judge Dickson's Order is AFFIRMED. An appropriate order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
